[Civ. No. 69821. Second Dist., Div. Five. Dec. 19, 1985.]

MICHAEL SMITH, Plaintiff and Appellant, v.
STATE SAVINGS AND LOAN ASSOCIATION,
Defendant and Appellant.

1094

**COUNSEL**

Perona, Langer, LaTorraca & Beck, Major Alan Langer and Raphael Metzger for Plaintiff and Appellant.

Wyman, Bautzer, Rothman, Kuchel & Silbert, David J. Bornstein, Lee W. Cotungno and Barry S. Glaser for Defendant and Appellant.

**OPINION**

**ASHBY, Acting P. J.**—State Savings and Loan Association (State) appeals from a judgment which declares that certain loans and trust deeds held by or on behalf of Michael Smith (Smith) have priority over the loans and trust deeds held by State.[1]

Although the record on appeal is lengthy, the controlling facts may be stated very briefly. F & D Properties, not a party to this appeal, owned a 32-unit condominium conversion project in Sherman Oaks which was subject to three existing blanket encumbrances totaling $7.2 million. In a tax-deferred exchange transaction Smith sold to F & D a property he owned in Stockton, California, and received from F & D 32 notes and deeds of trust secured by the condominium property. Smith's deeds of trust, fourth in priority, were recorded December 31, 1980.

On March 4, 1981, State provided F & D with new financing of the condominium project. It was understood between State and F & D that State's refinancing would be secured by a first trust deed, but Smith was not a party to this understanding. Prior to the funding of State's loan, State had no actual knowledge, as distinguished from constructive notice, of Smith's fourth trust deeds.

State's theory of priority is simple. Relying on the doctrine of equitable subrogation, State contends that, to the extent of the three encumbrances which were senior to Smith's, State is subrogated to and may assert the priorities of the former senior encumbrances.

---

[1] Smith has also appealed from an order determining that he is not entitled to an award of his attorney's fees.

██ The elements of this doctrine are summarized in *Katsivalis* v. *Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200, 210 [138 Cal.Rptr. 620]: " ' "One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit." [Citations.] . . . .' "

State contends that the findings in the trial court's statement of decision do not support the trial court's judgment which denies equitable subrogation to State. We agree. As discussed more fully, *infra,* from Smith's "response brief" and the trial court's statement of decision we may glean the theories relied upon by Smith for denying equitable subrogation to State. We conclude that none of these theories offers a valid legal reason for rejecting equitable subrogation in this case. Since the judgment is unsupported by any valid findings, it must be reversed.

The statement of decision offers three major theories for denying equitable subrogation: (1) the new loans provided by State did not comply with terms under which Smith had expressly agreed his trust deeds could be subordinated; (2) State had constructive knowledge of Smith's trust deeds because they had been recorded; and (3) State had no prior "interest to protect in making the loans." We discuss these theories separately.

### SUBORDINATION AGREEMENT

██ Major portions of the trial, the statement of decision, and Smith's response brief are devoted to perceived issues regarding subordination agreements. However, in determining whether State should be equitably subrogated to the extent of the prior encumbrances, Smith's cases on subordination agreements have no application.

The factual background is this: During the course of his transactions Smith apparently contemplated that F & D might want to refinance the senior encumbrances. Smith was willing to expressly subordinate his interests to such new financing, provided the new financing met certain conditions which he set forth in "riders" to his deeds of trust. These conditions

were that the new loans not exceed 15½ percent interest, that they have a term not less than 20 years, and that they not exceed specific amounts set forth in each of the riders. The trial court found that "the terms and conditions of the State loans substantially varied from the terms and conditions of the riders, in that the State loans bore interest at the rate of 15.75 percent interest, the term of the loans were 8 years, and in 24 of the loans the maximum amount of the loan exceed the stipulated amount . . . ." Smith argues that since the new State loans did not meet all the conditions under which Smith expressly agreed to subordinate his trust deeds, State's loans and trust deeds must be considered subordinate to Smith's.

Smith's cases on subordination agreements, however, deal with an entirely different problem.[2] As we described in *Hutton* v. *Glicksberg* (1982) 128 Cal.App.3d 240. 245-246 [180 Cal.Rptr. 141], subordination agreements typically involve a situation where a seller sells unimproved land to a developer, taking back a trust deed which the seller agrees will be subordinate to a construction loan to be made by another lender to build improvements on the property. The seller in such case is in a very vulnerable position. If the improvements are not built as planned, the property will not increase in value enough to provide adequate security for both the construction loan and the subordinate lien of the original seller. (*Miller* v. *Citizens Sav. & Loan Assn., supra,* 248 Cal.App.2d at pp. 662-663.) It is because of that vulnerability that courts have insisted "'. . . that rights of priority under an agreement of subordination extend to and are limited strictly by the express terms and conditions of the agreement. . . .'" (*Gluskin* v. *Atlantic Savings & Loan Assn., supra,* 32 Cal.App.3d at p. 313; see also *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023.)

That is manifestly not the situation here. Smith was not subordinating his loan to a future and larger construction loan. He knowingly and willingly accepted a fourth priority position, junior to three existing encumbrances. State here seeks only to be subrogated to the rights of the three prior encumbrances and only to the extent of those encumbrances. (*Katsivalis* v. *Serrano Reconveyance Co., supra,* 70 Cal.App.3d at pp. 214-215.) ■
■ The whole theory of equitable subrogation in such situations is that the junior encumbrancer (Smith) is left in exactly the same junior position he had before. (*Shaffer* v. *McCloskey* (1894) 101 Cal. 576, 580-581 [36 P.

---

[2]Smith cites *Radunich* v. *Basso* (1965) 235 Cal.App.2d 826, 834 [45 Cal.Rptr. 824]; *Miller* v. *Citizens Sav. & Loan Assn.* (1967) 248 Cal.App.2d 655 [56 Cal.Rptr. 844]; *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023 [96 Cal.Rptr. 338]; *Gluskin* v. *Atlantic Savings & Loan Assn.* (1973) 32 Cal.App.3d 307, 314 [108 Cal.Rptr. 318]; and *Ruth* v. *Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831, 841 [72 Cal.Rptr. 521].

196]; 73 Am.Jur.2d, Subrogation, § 103, pp. 663-664.) If granting equitable subrogation to State would not prejudice Smith but leave him in the same position he had before, and is otherwise equitable, it should be granted. Application of the doctrine in no way depends upon meeting conditions laid down by Smith under which he would expressly subordinate his interests. The court made no finding that subrogation would place Smith in a worse position than before. The court's findings involving subordination agreements do not support the judgment.

## CONSTRUCTIVE KNOWLEDGE

■ The trial court found that State had no actual knowledge of the Smith loans or deeds of trust until after the State loans had been funded. The court found, however, that State did have constructive knowledge. Apparently State's title insurer failed to discover the recorded Smith trust deeds.

Smith contends that State's failure to discover the recorded trust deeds constitutes the type of "culpable and inexcusable neglect" which will justify denial of equitable subrogation. (See *Katsivalis* v. *Serrano Reconveyance Co., supra,* 70 Cal.App.3d at p. 210.) Smith is wrong. Although equitable subrogation will be denied to a new lender who has actual knowledge of the junior encumbrance, it has long been the rule in California that the fact the junior encumbrance was recorded will not by itself bar equitable subrogation. (*Shaffer* v. *McCloskey, supra,* 101 Cal. at p. 580; *Darrough* v. *Herbert Kraft Co. Bank* (1899) 125 Cal. 272, 275 [57 P. 983].)

## VOLUNTEER

■ The trial court also made the following finding. "Prior to funding the STATE loans, STATE had no interest or loans in any of the condominium units, and had no interest to protect in making the loans, but made such loans in the ordinary course of business."

Smith argues that State should be denied equitable subrogation on the ground that State had no interest in the property to protect and was a "mere volunteer" or ". . . an officious intermeddler." He cites *Stein* v. *Simpson* (1951) 37 Cal.2d 79, 84 [230 P.2d 816], and *Caito* v. *United California Bank* (1978) 20 Cal.3d 694, 704 [144 Cal.Rptr. 751, 576 P.2d 466]. Neither case is remotely similar to this one. Although *Caito* contains a recitation of the elements of equitable subrogation, including that the subrogee " '. . . must not have acted as a volunteer,' " that case actually turned on an entirely different element, namely, that the debtor or codebtor could not be subrogated to the rights of the creditor, since the " '. . . debt paid must be one for which the subrogee was not primarily liable. . . .' " (20 Cal.3d at

p. 704.) *Stein* v. *Simpson, supra,* does at least contain a discussion of the principle that "the one invoking [subrogation] must not have, in making the payment, been a volunteer—an officious intermeddler, or affirmatively he must have had some interest to protect." (37 Cal.2d at p. 84.) But that case involved a fraudulent scheme by the defendant Simpson to obtain the property of the plaintiffs for less than full value at a foreclosure sale. Simpson held the second trust deed and refused the plaintiffs' tender of funds sufficient to pay off the second. Instead, Simpson paid off the first trust deed and then demanded that the plaintiffs tender an amount sufficient to pay off both trust deeds. To prevent such fraudulent scheme from succeeding, the court held that at the time Simpson paid the first trust deed loan his own trust deed loan had been extinguished by reason of the plaintiffs' tender of payment and thus Simpson had no interest in the property when he paid the bank. (37 Cal.2d at p. 84.) *Stein* was an unusual case in which granting subrogation would have been inequitable.

The circumstances here are entirely different. Unlike Simpson, State provided refinancing at the request of the debtor, F & D. Unaware of Smith's interest, State paid off the senior encumbrances in order to secure State's new loan with a first trust deed. In making such a loan in the course of its business, State obviously had sufficient interest to entitle it to subrogation to the rights of the senior encumbrances. One who advances money at the request of the debtor to pay off an encumbrance with the understanding that the advance will be secured by a first trust deed " ' " . . . is not a mere volunteer." ' " (*Katsivalis* v. *Serrano Reconveyance Co., supra,* 70 Cal.App.3d at p. 210; 73 Am.Jur.2d, *supra,* § 103, p. 663.)

## CONCLUSION

In light of our resolution of the main issue, we need not consider the other issues raised on these appeals.[3]

▉ Finally, however, Smith contends that State's appeal is moot and should be dismissed. It appears that during the pendency of this appeal, Smith instituted trustee sale proceedings and, in order to protect its own interests, State purchased Smith's interests at the trustee sales. Smith contends that since now he no longer holds any trust deed interest in the prop-

---

[3]Since we conclude Smith should not have prevailed against State's claim of equitable subrogation, we need not consider his cross-appeal in which he contends he should have been awarded attorney's fees on a theory analogous to *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309, 315 [168 Cal.Rptr. 552].

Since we conclude the trial court's statement of decision does not support the judgment, we need not consider State's alternative contentions of alleged procedural errors leading to the adoption of the statement of decision.

erties, it would be idle to reverse the instant judgment in order to enter a new judgment declaring that State's trust deeds have priority over Smith's. State denies that the appeal is moot, contending that, as a result of the trial court's erroneous judgment, Smith has been unjustly enriched because he was able to recoup all of his investment in the property. State argues the appeal is not moot because "a reversal would restore the parties to their appropriate priority positions. That is, Smith would be required to refund to State the monies he received at his foreclosure sales, State would set aside its foreclosure sales, and the parties would each receive the benefit of their respective bargain."

Smith's argument assumes that State would have no further remedy against Smith even if the instant judgment were reversed and a new judgment giving priority to State were entered. State claims to the contrary, that if the instant judgment were reversed State could institute other proceedings against Smith. The burden is not on State at this juncture to prove the validity of this theory. That should be determined by another court at such future time as State institutes other proceedings and has had the opportunity to plead or prove its theory of recovery. Smith has not persuaded us that the appeal is moot. The trial court's judgment declaring the priorities of the parties' trust deeds is erroneous, and State is entitled to reversal of the judgment.

The judgment is reversed. Smith's appeal from the order denying attorney's fees is dismissed. State to recover costs on both appeals.

Hastings, J., and Eagleson, J., concurred.

A petition for a rehearing was denied January 17, 1986, and the petition of plaintiff and appellant for review by the Supreme Court was denied April 16, 1986.