FIDELITY NATIONAL TITLE INSURANCE COMPANY; Philip Ruiz, Plaintiffs–Appellants,

v.

UNITED STATES of America DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE, Defendants–Appellees.

No. 89–55209.

United States Court of Appeals, Ninth Circuit.

Submitted April 11, 1990 *.

Memorandum Filed April 30, 1990.

Designated as Opinion July 2, 1990.

---

1. The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Barry R. Laubscher and Mark A. Schadrack, Pettis, Tester, Kruse & Krinsky, Irvine, Cal., and Jeffrey W. Dondanville and Robert S. Davis, Fidelity Nat. Title Ins. Co., Irvine, Cal., for plaintiffs-appellants.

Mason C. Lewis, Asst. U.S. Atty., Los Angeles, Cal., and Gary R. Allen, David English Carmack, and Doris D. Coles, Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BROWNING, NOONAN and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Fidelity National Title Insurance Company and Phillip Ruiz (collectively referred to as "Ruiz") appeal the district court's grant of summary judgment in favor of the United States Internal Revenue Service ("IRS"). The district court ruled that the IRS had a legitimate tax lien on Ruiz' property. The court further held that Ruiz could not establish any priority over the IRS' lien under a theory of equitable subrogation. We affirm.

## BACKGROUND FACTS

The property at issue in this case is located in West Covina, California. In 1979, the property was owned by Patrick and Lorraine Reyes. When the Reyes' purchased the property, they executed a deed of trust on the property in favor of Homestead Savings & Loan Association ("Homestead"). Subsequently, three other liens were recorded on the property. The first lienholder was Environmental Engineering Company ("Environmental"), the second lienholder was the State of California and the final lienholder was the IRS. During 1986, the Reyes failed to make some loan payments to Homestead. In response, Homestead exercised its power of sale under the deed of trust. The trustee held a nonjudicial foreclosure sale on the property and neither it nor Homestead discovered the IRS lien prior to the sale. Therefore, the IRS was not given any notice of the foreclosure sale. At the sale, the property was purchased by Morton Dorman. The trustee conveyed the property to Dorman via a trustee's deed. The proceeds of the sale were used to satisfy the Reyes' debt to Homestead and also to satisfy Environmental's lien and the tax lien held by the State of California. After those encumbrances were satisfied, there remained $10,000. That was distributed to the Reyes. The IRS received nothing from the sale.

In 1987, Dorman sold the property to Ruiz. The IRS then notified Ruiz that the property was still encumbered by the IRS lien. The IRS informed Ruiz that it planned to sell the property to satisfy the lien. Ruiz filed suit to block the IRS.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's grant of summary judgment. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989).

## DISCUSSION

The district court correctly ruled that Ruiz was not entitled to equitable subrogation. Ruiz attempts to invoke the doctrine of equitable subrogation in order to avoid

the impact of an IRS lien on his property.[1] The IRS lien was not extinguished at the earlier foreclosure sale because the IRS had not been given notice of the sale. *See* 26 U.S.C. § 7425(b) (foreclosure sale extinguishes federal lien unless United States not given notice of sale). However, the Internal Revenue Code also provides that the federal government will recognize a person's state law subrogation rights. 26 U.S.C. § 6323(i)(2).

■ California recognizes the doctrine of equitable subrogation. *Caito v. United California Bank*, 20 Cal.3d 694, 576 P.2d 466, 144 Cal.Rptr. 751 (1978). California applies equitable subrogation when five criteria are met. First, the claimant must have paid the debt owed to the lienholder in order to protect the claimant's own interest. Second, the claimant must not have acted as a volunteer. Third, the claimant could not have been primarily liable for the debt he paid. Fourth, the claimant must have paid the entire debt owed to the lienholder. And, fifth, the subrogation must not work an injustice to the rights of others. 20 Cal.3d at 704, 144 Cal.Rptr. 751, 576 P.2d 466.

■ In this case, Dorman cannot show that he was protecting his own interest in the property when he paid the purchase price. Dorman also cannot show that he was acting as anything but a volunteer when he purchased the property. The critical factor in this transaction is that Dorman purchased the land at a foreclosure sale. Dorman expected that the trustee would provide him title to the land and that title would be free and clear of any claims of Homestead or any lienholder junior to Homestead. *See generally* 3 B.E. Witkin, *Summary of California Law* 648–49 (9th ed. 1987). Dorman had only to pay the trustee an appropriate purchase price. It did not matter to Dorman how the trustee subsequently distributed the purchase price since Dorman expected to have a clean title

to the property regardless of the trustee's actions.

Dorman was in a position similar to that of the purchasers in *Simon v. United States*, 756 F.2d 696 (9th Cir.1985). There, the purchasers bought some property at a county tax sale. The property had an IRS tax lien on it. The lien had not been extinguished by the county's sale because the county had failed to notify the IRS of the sale. The Simons argued that they were entitled to be equitably subrogated to the rights of the government. However, the court rejected their argument because it found that when the Simons purchased the property, they were not acting to protect an existing interest, nor did they believe that they were paying the debt of another. 756 F.2d at 699. Furthermore, since the Simons were merely purchasing the property, the court held that they were volunteers. *Id.* Finally, the purchase price paid by the Simons did not satisfy all of the IRS lien. Therefore, the Simons had not paid off the entire debt of the lienholder to whom they wished to be subrogated. *Id.*

In principle, Dorman is no different from the Simons. Dorman paid money to the trustee in order to purchase some property. Dorman can be said to have paid the debts of another only to the extent that Dorman certainly knew that his payment to the trustee would be used to satisfy a debt owed to Homestead and any other junior lienholders. However, the Simons also certainly knew that their purchase money would go to satisfy various government taxes. What is important is that both the Simons and Dorman knew that the forced sale of the property would extinguish any liens regardless of how much they paid as a purchase price. Therefore, neither the Simons nor Dorman paid money in order to satisfy the debt of another. They paid money solely as volunteer purchasers of property. *See also Little v. United States*, 709 F.2d 517 (9th Cir.1983) (court reached

---

**1.** Ruiz claims that Dorman was entitled to equitable subrogation. Ruiz then argues that he is entitled to Dorman's right of equitable subrogation because Ruiz purchased all of Dorman's rights in the property. We focus our analysis on the threshold issue—Dorman's right to equitable subrogation.

similar result although it relied on state statutes since repealed).[2]

This is not a case where a current owner pays a debt owed to a senior lienholder in order to protect the owner's interest in the property. *See First Amer. Title Ins. Co. v. United States,* 848 F.2d 969, 972 (9th Cir. 1988); *Darrough v. Herbert Kraft Co. Bank,* 125 Cal. 272, 57 P. 983 (1899). If Dorman had been the owner of the property and had paid off the debt owed to Homestead, the courts generally would have allowed Dorman to maintain the same rights as those held by the lienor, Homestead. *First Amer. Title Ins. Co.,* 848 F.2d at 973–74; *Darrough,* 125 Cal. at 274–75, 57 P. 983.

However, the right granted to owners who pay off debts is not a right also granted to purchasers in Dorman's position. Dorman cannot benefit from any of the rights once held by Homestead or the other lienholders senior to the IRS. Therefore, Dorman's rights in the property were subject to the valid IRS lien. The most that Dorman could transfer to Ruiz was the same property rights that Dorman had purchased at the foreclosure sale. Therefore, Ruiz is no more entitled to equitable subrogation than was Dorman. Ruiz has the right to the property subject to the IRS lien.

It is true that the IRS was placed in a better position after the foreclosure sale than it was in prior to the sale. However, no California court has said that equitable subrogation should apply solely because an existing lienholder is put in a better position. Furthermore, the IRS did not obtain its lien through false means. It duly assessed taxes against the Reyes and properly recorded its lien. Any potential purchaser would have been on notice regarding the IRS lien if that purchaser had performed a careful title search. The doctrine of eq-

uitable subrogation requires a person to show something more than the fact that a junior lienholder will be put in a better position than the lienholder would be in if equitable subrogation applied. Since Dorman was a volunteer purchaser and he did not pay money at the foreclosure sale in order to protect his own interest in the property, neither Dorman nor Ruiz is entitled to equitable subrogation merely because the IRS might now recover more on its tax lien than it could have had it been a party to the foreclosure sale.

CONCLUSION

The district court's judgment in favor of the Internal Revenue Service is AFFIRMED.

---

**2.** The only case that Ruiz cites that truly supports his position is a case from Florida. *Trueman Fertilizer Co. v. Lester,* 155 Fla. 338, 20 So.2d 349 (1944). Clearly, Florida case law does not bind the California courts. Furthermore, the *Trueman* court did not provide any analysis for its position and it is unclear whether Florida uses a test for equitable subrogation

that is in any way similar to California's test. It would be unwise for us to adopt Florida's approach in light of both California and Ninth Circuit case law.