**Jea Min HAN; Jae Soon Han,
Plaintiffs–Appellants,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 90–55804.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1991.

Decided Sept. 11, 1991.

Allan B. Cooper, Ervin, Cohen & Jessup, Beverly Hills, Cal., for plaintiffs-appellants.

Calvin C. Curtis and Nancy Morgan, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.

TROTT, Circuit Judge:

■ Jea Min Han and Jae Soon Han purchased a piece of residential property from Yue Khang Lok. The Hans were not aware that the property was encumbered by a federal tax lien. After the purchase, the Internal Revenue Service ("IRS") levied upon the property to satisfy the lien. In an attempt to stave off the foreclosure sale and to protect their investment, the Hans filed a complaint for wrongful levy and for injunctive relief against the IRS. The district court granted summary judgment against the Hans, holding essentially that the IRS was entitled to the full value of the property. The Hans argue on appeal that the IRS is entitled to recover only the previous owner's equity in the property, and in the alternative, that the Hans should be equitably subrogated to the priority position of the lender whose existing loan they paid off when they purchased the property.[1] We agree with the second argument, and we reverse.

### I

Yue Khang Lok owned a house in Arcadia, California, which he sold to the Hans. Because Lok failed to pay $2.3 million in income taxes for 1985–87, the IRS filed a lien against the Arcadia house. Although this lien was properly recorded before escrow opened on the house, the Hans were unaware of it until after escrow closed. Their real estate agent, Kay Shin, knew of the tax lien, but Lok represented

---

1. The Hans also argue for the first time on appeal that they will be denied due process if the IRS is allowed to recover more than the previous owner's interest. As this argument was not before the district court and is raised here only briefly, with no citation and little argument, we decline to reach its merits. *See United States v. Verdugo–Urquidez,* 939 F.2d 1341, 1344–45 n. 2 (9th Cir.1991).

to her that it would be paid off before close of escrow. Ms. Shin did not advise the Hans of this problem.

Lok sold the Arcadia property to the Hans for $550,000. At the time of sale, World Savings and Loan Association ("World Savings") held a first trust deed for $367,000 that was recorded prior to the tax lien's recordation. This loan was paid off in escrow. After $38,000 was paid for settlement charges and other miscellaneous debts, Lok's net from the sale was approximately $145,000.

Escrow closed on January 5, 1988, and the IRS levied on the property on March 24, 1989. The levy was served on the Hans, putting the IRS in constructive possession of the property. The IRS has never taken actual possession, although it declared its intention to sell the property at a public auction on May 17, 1989. The plan to sell was withdrawn pending resolution of this lawsuit.

■ The Hans filed this action, seeking declaratory relief limiting the IRS to what it would have yielded from foreclosure if the property still belonged to Lok. The Hans asserted the IRS is only entitled to $145,000, which represents the difference between the sale price of $550,000, and the $405,000 in liens and other obligations paid in escrow. Alternatively, they argued that they are entitled to equitable subrogation, which would give them a priority position on the property in front of the IRS in the amount of World Savings's first trust deed. Equitable subrogation permits a person who pays off an existing encumbrance to assume the same priority position as the holder of that encumbrance. Under this argument, they assert that if the property is now sold, they are entitled to the first $367,000 yielded by the transaction, as World Savings would have been if it still held the first trust deed.

The district court rejected the Hans' first argument, finding no basis for limiting the IRS to what it would have received if Lok had still owned the property at the time of a foreclosure sale. "[T]he government may enforce its entire tax lien without limitation." The court also rejected the eq-

uitable subrogation argument, but it did so only because a purchaser with actual knowledge of a previously existing lien is ineligible for this equitable remedy, and it found that the Hans had the equivalent of actual knowledge of the tax lien. The Hans' agent, Kay Shin, had actual knowledge of the tax lien, leading the court to conclude that the Hans had imputed actual knowledge, based on agency principles that impute the knowledge of the agent to the principal. In every other respect, however, the court concluded that the Hans qualified for equitable subrogation.

II

The Hans assert that the IRS should be limited in its recovery to the value of Lok's interest in the Arcadia house. They claim that the IRS is only entitled to $145,000, the amount netted by Lok. The Hans argue that because the California rule is that title is transferred to the holder of a deed of trust, *see Hohn v. Riverside County Flood Control & Water Conservation Dist.*, 228 Cal.App.2d 605, 611, 39 Cal.Rptr. 647, 651 (1964), World Savings held title to the entire property at the time of sale, except the $145,000 unencumbered portion. Lok held title only to the $145,000 portion. They further rely on *United States v. Rodgers*, 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2140–41, 76 L.Ed.2d 236 (1983), which holds that a tax lien cannot extend beyond the interest held by the taxpayer. If Lok only had title to the $145,000, and the IRS cannot levy beyond his interest, then the IRS would be limited to recovering only Lok's equity.

■ The fatal defect in this line of reasoning is that it assumes the extent of Lok's liability to the IRS secured by the lien was somehow fixed at the moment of sale. Assuming for the moment that World Savings held actual title, the IRS nonetheless is not limited to the value of Lok's interest at the moment of sale. A tax lien "shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322 (1988).

The IRS is authorized to seize liened property even if it has been sold to a third party. 26 C.F.R. 301.6331–1 (1990). Nowhere in the statutory or regulatory scheme is there a provision limiting the IRS's recovery. A lien continues unabated regardless of sale, so long as it is properly recorded. Because the lien is unaffected by sale, we see no basis for fixing the amount of the lien at the time of sale. We decline to legislate where Congress has failed to do so.

■ Furthermore, the fact that the IRS may recoup more than it would have if it had foreclosed while Lok still held the property does not affect our analysis. In *Fidelity National Title Insurance Co. v. United States Department of the Treasury,* 907 F.2d 868 (9th Cir.1990), we permitted the IRS to recover a greater sum due to a foreclosure sale than it would have received if the property had still been held by the delinquent taxpayer. "It is true that the IRS was placed in a better position after the foreclosure sale than it was in prior to sale. However, no California court has said that equitable subrogation should apply solely because an existing lienholder is put in a better position." *Id.* at 871. Additionally, where the IRS receives a "bonus" because of a sale, if the extra proceeds are applied to reduce a legitimate tax lien, the IRS has not necessarily been unjustly enriched. *Simon v. United States,* 756 F.2d 696, 699 (9th Cir.1985).

## III

The Hans' more persuasive argument is that they are entitled to be equitably subrogated to World Savings's position as first-place lienholder because they paid and discharged World Savings's first trust deed. Under the doctrine of equitable subrogation, the Hans would stand in the shoes of World Savings and retain the same priority that World Savings had on its trust deed. If this argument prevails, and the property were now sold to satisfy the tax lien, the Hans would recover the $367,000 they paid to World Savings in escrow when they purchased the property.

Equitable subrogation is appropriate where:

"(1) Payment [was] made by the subrogee to protect his own interest. (2) The subrogee [has] not ... acted as a volunteer. (3) The debt paid [was] one for which the subrogee was not primarily liable. (4) The entire debt [has] been paid. (5) Subrogation [would] not work any injustice to the rights of others."

*Caito v. United California Bank,* 20 Cal.3d 694, 704, 576 P.2d 466, 471, 144 Cal.Rptr. 751, 756 (1978) (quoting *Grant v. de Otte,* 122 Cal.App.2d 724, 728, 265 P.2d 952 (1954)). Equitable subrogation is a broad equitable remedy, not limited to circumstances where these five factors are met, but is appropriate whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Id.* 20 Cal.3d at 704, 576 P.2d at 471, 144 Cal.Rptr. at 756 (internal quotations omitted). The California courts have applied this doctrine liberally.

The doctrine of [equitable] subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is ... now broad and expansive and has a very liberal application.

*In re Estate of Johnson,* 240 Cal.App.2d 742, 744–45, 50 Cal.Rptr. 147, 149 (1966) (internal quotation omitted).

Although the district court explicitly found the other elements of equitable subrogation satisfied, it denied relief because it determined that the Hans had what the court initially characterized as "actual" knowledge of the lien. During a subse-

quent hearing, the district court retreated from its finding of actual knowledge, holding instead that the Hans had no actual knowledge of the lien before the sale. Nevertheless, the district court "deemed" Shin's actual knowledge to be the Hans' knowledge. Thus, the court imputed Kay Shin's actual knowledge to the Hans, and found they were ineligible for equitable relief because of that knowledge. The court relied on *Smith v. State Savings & Loan Association,* 175 Cal.App.3d 1092, 1098, 223 Cal.Rptr. 298, 301 (1985), which holds that equitable subrogation is denied to a party who has "actual" knowledge of an existing encumbrance.

■■■ Although the district court was correct in citing *Smith,* we conclude it erred in determining that Shin's knowledge of the lien barred equitable subrogation. By statute, knowledge that is imputed by action of law is *constructive* knowledge, not actual knowledge. Cal.Civ.Code § 18 (West 1982). Under *Smith,* constructive knowledge does not bar equitable relief. "[T]he fact the junior encumbrance was recorded will not by itself bar equitable subrogation." *Smith,* 175 Cal.App.3d at 1098, 223 Cal.Rptr. at 301. It is well settled that recording gives only constructive notice, not actual notice. Since the Hans had only constructive knowledge, the court erred in denying equitable relief on this basis.

■■ Although the district court erred in imputing Shin's knowledge to the Hans, we

agree with its conclusion that equitable subrogation is otherwise appropriate. The closest issue is whether the first two factors are satisfied: that the Hans were protecting their own interest, and that they were not "volunteers" or "intermeddlers." *See Johnson,* 240 Cal.App.2d at 745, 50 Cal.Rptr. at 149. Having decided to purchase the property without knowledge of the IRS lien, the Hans paid off World Savings's trust deed to establish and to protect their own interest, rather than simply to meddle officiously in World Savings's relations with Lok.[2]

The other three factors also favor the Hans. The Hans were not primarily liable on the debt; Lok incurred the debt when he purchased the property. *See Grant,* 122 Cal.App.2d at 729, 265 P.2d at 955 (equitable subrogation proper where a party pays a debt which he was under no obligation to pay). The entire debt was paid. *See Caito,* 20 Cal.3d at 704, 576 P.2d at 471, 144 Cal.Rptr. at 756 (listing five elements of equitable subrogation). The IRS will not suffer any injustice as a result of equitable subrogation, *see id.,* 576 P.2d at 471, 144 Cal.Rptr. at 756, since it will recoup as much as if Lok had still owned the property.[3] Furthermore, the Hans are innocent parties: it is undisputed that they had no actual knowledge of the tax lien, and no claim is made that they were delinquent in failing to discover the lien. They obtained title insurance, and they relied on their real estate agent to keep them informed, as would any home buyer.

---

**2.** In *Simon* and *Fidelity National,* we indicated that new purchasers of property were "volunteers" for purposes of equitable subrogation under California law. *See Fidelity National,* 907 F.2d at 870–71; *Simon,* 756 F.2d at 699. However, in both of those cases the purchases were made at forced sales and the purchasers were not paying off existing debts, but simply extinguishing all liens by obtaining the property at any price. As we stressed in *Fidelity National,* "[w]hat is important is that [the purchasers] knew that the forced sale of the property would extinguish any lien regardless of how much they paid as a purchase price. Therefore, neither [of the purchasers] paid money in order to satisfy the debt of another." 907 F.2d at 870; *see also id.* ("The critical factor in this transaction is that [the purchaser] purchased the land at a foreclosure sale."). In contrast, the Hans were well aware that the Home Savings lien needed

to be paid off from the purchase price, and would not be extinguished automatically by virtue of a sale. It was simply not the case that "[i]t did not matter to [the Hans] how the trustee subsequently distributed the purchase price since [the Hans] expected to have a clean title to the property regardless of the trustee's actions." *Id.*

**3.** We are unimpressed by the IRS's repeated claims that its victory would neither unjustly enrich nor produce a windfall in favor of the United States. One cannot fail to see this case as an attempt by the IRS to require the Hans to pay a portion of Lok's delinquent taxes. The IRS's claim that equitable subrogation would make it the victim of "injustice" is thoroughly unconvincing.

Accordingly, we reverse the grant of summary judgment in favor of the IRS. We hold that the Hans are equitably subrogated to all liens and encumbrances recorded prior to the July 15, 1987 tax lien in question that were paid from the proceeds of the sale to the Hans. We remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.