**Jeffrey MORT; Pamela Mort; Fred Strefling; and Jeffrey Tobain, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. CV–S–93–913.

United States District Court, D. Nevada.

Sept. 14, 1994.

R. Gardner Jolley, Las Vegas, NV, for plaintiffs.

Kathryn E. Landreth, U.S. Atty., Las Vegas, NV, and Alisa R. Margolis, Tax Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

### ORDER

GEORGE, Chief Judge.

This matter is before the Court on plaintiffs' Motion for Summary Judgment (# 8) and defendant's Cross–Motion for Summary Judgment (# 10). Plaintiffs seek a declaratory judgment that their claim to the Property is superior to the IRS's lien. Further, they move pursuant to 26 U.S.C. § 7426 for an injunction enjoining the government from injuring their rights in the Property. Plaintiffs also seek attorneys' fees and costs pursuant to 26 U.S.C. § 7430.

*I. Background*

On December 11, 1990, Cathryn DeLee a/k/a Cathryn Myers signed a promissory note in favor of Edwin J. Kern and Jeanne Kern and the note was secured by a deed of trust (the Kern Deed of Trust) on property owned by DeLee [the Property]. The Kerns recorded their deed of trust on December 18, 1990.

On August 24, 1992, the IRS filed a Notice of Federal Tax Lien to collect the unpaid income tax liabilities of Sol and Cathryn De-Lee for tax years 1987–1990. The IRS filed and recorded its tax lien in Clark County, Nevada pursuant to 26 U.S.C. § 6223(f) and the lien presently remains in effect on the Property.

In late October, the DeLees conveyed the Property to the Danielle DeLee Irrevocable Trust ("DeLee Trust.") On November 17, 1992, James E. Belmont and Carol L. Belmont loaned the DeLee Trust $38,000, which was secured by the a deed of trust (the Belmont Deed of Trust). The DeLee Trust used $30,500 to pay off the Kern Deed of Trust, and $2,086.18 to bring taxes current on the Property. Also on November 17, 1992, the Belmonts purchased title insurance for the Property from Fidelity National Title Agency of Nevada, Inc. ("Fidelity"). On December 21, 1992, Plaintiffs purchased the Belmont Deed of Trust for $38,000. Pursuant to an indorsement, Fidelity insured plaintiffs' title in the Property.

After discovering the IRS lien in June 1993, plaintiffs filed this action against the United States asserting that their interest in the Property should be superior to the tax lien filed by the government. They argue that, under the doctrine of equitable subrogation and 26 U.S.C. § 6323(i)(2), they have a superior lien claim to the Property in the amount of $32,586.19, plus interest. The Government does not dispute that Plaintiffs bought the Belmont Deed of Trust, which Deed secured a loan used to purchase the Kern Deed of Trust and pay the Clark County taxes on the Property. It is also undisputed that the Belmonts purchased title insurance from Fidelity National and that Fidelity National did not discover the tax lien or inform the Belmonts of the tax lien. As

such, Plaintiffs conclude that they should be placed into the Kerns' and Clark County's priority of claims.

The United States counters that, although Plaintiffs are innocent of their injury, they have nevertheless failed to establish their entitlement to equitable relief. It urges that Plaintiffs should have first pursued their adequate remedy at law, specifically a suit in law against their title insurer.

■ At the hearing on this matter, the court raised the question whether it should exercise its equity jurisdiction if Plaintiffs have not first pursued their remedy in law. That is, the court questioned whether Plaintiffs' injury is ripe for consideration. "The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). Although the Anti–Injunctive Act does not bar injunctive relief in this matter, "neither the statute nor the legislative history says anything to support a contention that the usual equitable prerequisites to injunctive relief should not be required." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 313 (9th Cir.1982). In the present matter, Plaintiffs request that this court exercise its equity jurisdiction and to apply the equitable doctrine of subrogation. They have not, however, shown that they lack an adequate remedy in law or that they will suffer an irreparable injury. Instead, Plaintiffs argue that this court should not consider whether or not they have an adequate legal remedy against their title insurer because the insurer is not a party to this action. The court disagrees for several reasons.

■ First, the court cannot find any support for the proposition that a court, sitting in equity, cannot consider a plaintiff's possible legal remedies, even though those remedies may be against an unnamed party. This is particularly true where, as here, a grant of equitable relief may permit the insurer to avoid its contractual obligations to the Plaintiffs, arising from its own mistakes, to the detriment of an innocent party.

Second, before granting equitable relief, the court must find that Plaintiffs' injury is irreparable. That is, the court must find that the *only* relief available to Plaintiffs is equitable subrogation. Such a finding, however, would require the court to ignore Plaintiffs' contract with their title insurer, which contract could provide relief. Further, the court would be required to ignore Plaintiffs' failure to show that they cannot obtain relief on this contract. Finally, Plaintiffs' failure to first bring a claim on their insurance leaves open the possibility that, if the court declines to grant equitable relief, Plaintiffs might yet obtain legal relief. Accordingly, the court must find that Plaintiffs have not shown irreparable injury.

■ Third, subrogation requires this court to balance all the equities. That is, the court must consider all circumstances underlying the injury and the effect of its decision. Equity must recognize that the Government is innocent of Plaintiffs' injury; its actions did not precipitate Plaintiffs' purchase of a junior Deed. The IRS merely recorded their tax lien and gained senior priority because the Belmonts extinguished the Kern's Deed of Trust. Likewise, Plaintiffs are innocent of this injury. The Belmonts secured their Note with a Deed of Trust that they believed had senior priority. Yet Plaintiffs' injury was not spontaneous, arising in a vacuum without cause. Plaintiffs' injury resulted from the insurer's failure, negligent or otherwise, to discover the recorded tax lien and to inform the Belmonts of the lien.

If the court ultimately grants equitable relief, both the Plaintiffs and their insurer will benefit. The insurer contracted with the Belmonts, receiving valuable consideration, to insure against the subsequent discovery of senior priorities such as this tax lien. Although that event has now occurred, the insurer has not been required to perform its duty because Plaintiffs instead chose to sue the Government, an innocent party. The insurer's benefit thus arises from its own mistake and comes at the expense of the Government, which will lose the benefit of having recorded its lien.

The title insurer may also be affected by a decision to deny equitable relief. Such a decision will plainly benefit the Government, which will maintain its senior priority. The question is whether that benefit will come at the expense of the Plaintiffs or the insurer. The court cannot answer that question, however, because the Plaintiffs have not first pursued their legal remedy against the insurer. Further, assuming that Plaintiffs bring a successful suit against their insurer, it cannot be said that the Government is unjustly enriched by being left in its senior position on the Property. As stated by the Washington Supreme Court,

> it is difficult to think of a situation in which a title insurance company could not claim unjust enrichment as to someone who might inadvertently benefit by their negligence. Either they insure or they don't. It is not the province of the court to relieve a title insurance company of its contractual obligation.

*Coy v. Raabe*, 69 Wash.2d 346, 418 P.2d 728, 731 (1966). In sum, this court finds that it must consider Plaintiffs' failure to first seek their legal remedy against their title insurer before it can decide whether it should grant equitable relief.

Plaintiffs' argument that this court should not require an insured to show lack of an adequate legal remedy against the insurer also raises concerns that insurers will avoid liability arising from their contractual obligations by merely bringing suit in the name of the insured. For example, in *Universal Title Insurance Co. v. United States*, 942 F.2d 1311 (8th Cir.1991), the insured sought relief from the insurer when the IRS notified the insured of the senior tax lien. The insurer then brought suit in its own name and sought equitable relief. Finding that insurers are held to a stricter standard under Minnesota law, the court denied equitable relief. Similarly, in *Coy v. Raabe, supra*, the court held that insurers cannot rely upon equitable subrogation to avoid the consequences of failing to discover a senior lien. Yet, if the court cannot consider whether an insured has an adequate legal remedy against the insurer, then insurers could readily avoid the stricter standards recognized by these courts by bringing the suit in the name of the insured. Such avoidance

would place the entire burden of the insurer's failure on the innocent senior lienholder. This result cannot be permitted in an action that seeks to balance the equities amongst all innocent parties brought before the court.

Finally, the court finds that *Han v. United States,* 944 F.2d 526 (9th Cir.1991), does not control this matter. In that case, the Ninth Circuit did not address whether an insured must first pursue his legal remedies against its insurer. Instead, the court held that, under California law, the real estate agent's actual knowledge of the tax lien could not be imputed to an innocent purchaser. The court did not decide whether the Hans should have first pursued their legal remedy against their insurer.

Accordingly, the court finds that the present matter is not yet ripe for consideration. Before this court can consider whether Plaintiffs should be equitably placed into the senior position, they must first pursue their legal remedies against their insurer.

Therefore, for good cause shown,

IT IS **ORDERED** that Plaintiffs' Motion for Summary Judgment (# 8) is DENIED;

IT IS FURTHER **ORDERED** that Defendant's Cross–Motion for Summary Judgment (# 10) is DENIED;

IT IS FURTHER **ORDERED** that this action is DISMISSED without prejudice.