**Jeffrey MORT; Pamela Mort; Fred Strefling; Jeffrey Tobian, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–15177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1996.

Decided June 17, 1996.

Stephen E. Anderson, Irvine, California, for plaintiffs-appellants.

Gary R. Allen and Anthony T. Sheehan, Tax Division, United States Department of Justice, Washington, D.C., for defendant-appellee.

Before BEEZER and HAWKINS, Circuit Judges, and ZILLY, District Judge.*

## OPINION

ZILLY, District Judge:

Appellants Jeffrey and Pamela Mort, Jeffrey Tobian, and Fred Strefling (collectively, "the Morts"), assignees of a promissory note secured by a deed of trust, brought an action in the United States District Court, District of Nevada, for injunctive relief and a declaratory judgment that their trust deed interest was superior to a federal tax lien. The Morts acquired their interest after the Internal Revenue Service (IRS) filed a tax lien on the property, but argued that they were entitled to be equitably subrogated to the priority position of the lender whose loan was paid off by their assignor. The district court denied the parties' cross-motions for summary judgment and dismissed the Morts' action without prejudice, concluding that equity jurisdiction should not be exercised until the Morts first pursued any legal remedies they may have against their title insurer. The Morts argue on appeal that (1) the district court erred in not reaching the merits of its equitable subrogation claim, and (2) they are entitled to be equitably subrogated as a matter of law. We agree with both arguments and reverse.

---

* The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

## BACKGROUND

On December 12, 1990, Cathryn Myers (also known as Cathryn DeLee) signed a promissory note in the amount of $30,000 in favor of Elwin J. and Jeanne Kern. The note was secured by a deed of trust on certain real property in Nevada, which Myers owned as separate property. The deed of trust was recorded on December 18, 1990.

On August 24, 1992, the IRS filed a notice of federal tax lien with the Recorder for Clark County, Nevada in the amount of $33,-083 to collect the unpaid income tax liabilities of Myers and her husband, Sol DeLee.

Sometime in late October 1992, Myers conveyed title to the property to the "Dannielle DeLee Irrevocable Trust of October 1989" ("DeLee Trust"). On November 13, 1992, James and Carol Belmont made a loan to the DeLee Trust in the amount of $38,000, which was secured by a deed of trust on the property. The DeLee Trust used $30,500 of the Belmont loan to pay off the Kern loan, and another $2,086 to pay off an existing state property tax lien.

The Belmonts purchased title insurance on the property from Fidelity National Title Agency of Nevada ("Fidelity"). Fidelity failed to discover the federal tax lien and insured clear title. The Belmonts recorded their deed of trust on November 17, 1992.

On December 21, 1992, the Belmonts, in consideration of a payment of $38,000, conveyed their interest in the promissory note and the deed of trust to the Morts. The assignment was recorded on December 23, 1992, and re-recorded on January 20, 1993. The Belmonts' title insurance policy with Fidelity was transferred to the Morts by endorsement.

The Morts first learned of the IRS lien in June or July, 1993. On August 12, 1993, the IRS seized the DeLee land. The Morts then filed a complaint in the United States District Court for the District of Nevada seeking injunctive relief and a declaratory judgment that their trust deed interest was superior to the federal tax lien. The parties filed cross motions for summary judgment, which were denied by the district court on September 16, 1994. The district court dismissed the Morts' complaint without prejudice, concluding that the Morts could not bring their claim for equitable subrogation without first pursuing their legal remedies against the title insurer. *See Mort v. United States,* 874 F.Supp. 283 (D.Nev.1994).

## STANDARD OF REVIEW

■ The district court's decision not to exercise its equitable jurisdiction is reviewed for an abuse of discretion. *Cf. Ramsden v. United States,* 2 F.3d 322, 324 (9th Cir.1993) (district court's decision to exercise its equitable discretion under Fed.R.Crim.P. 41(e) reviewed for abuse of discretion), *cert. denied,* —— U.S. ——, 114 S.Ct. 1624, 128 L.Ed.2d 349 (1994).[1]

## DISCUSSION

### I

■ The district court offered no authority in support of its decision not to exercise equity jurisdiction in this case, and we are unable to find any. "It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law...." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992) (citation and internal quotation omitted). Equitable relief should not be denied, however, unless the available legal remedy is against the same person from whom equitable relief is sought. *Barr v. Roderick,* 11 F.2d 984, 986 (N.D.Cal.1925) ("[t]he fundamental principle ... that equity will grant no relief where an adequate remedy at law exists, must be limited strictly to cases in which there is an adequate legal

---

1. Though the district court stated it was dismissing the appellants' action on ripeness grounds, which would ordinarily be reviewed de novo, *Dodd v. Hood River County,* 59 F.3d 852, 857 (9th Cir.1995), the basis for the court's dismissal of the Morts' equitable subrogation claim was its determination that equity jurisdiction should not be exercised. Under either standard, we would reverse the district court's decision.

remedy against the defendants before the court.").[2]

The Morts have no legal remedy against the IRS. Their only potential legal remedy is against Fidelity, which is not a party to this action in equity. Because the availability of a legal remedy against a third party does not bar equitable relief, the district court abused its discretion in refusing to exercise its equitable jurisdiction.

## II

■ Because the district court declined to exercise jurisdiction, it did not reach the merits of the Morts' equitable subrogation claim. In these circumstances, we can either remand to the district court to consider the Morts' claim or dispose of it ourselves if possible to do so as a matter of law. *Meinhold v. United States Dept. of Defense*, 34 F.3d 1469, 1474 (9th Cir.1994); *RTC Transp. Inc. v. Conagra Poultry Co.*, 971 F.2d 368, 375 (9th Cir.1992). In this case, the facts are undisputed and further factfinding is unnecessary to resolve the equitable subrogation issue. Thus, we can determine as easily as the district court whether the Morts are entitled to equitable subrogation, and we exercise our discretion to do so.

### A. Applicable Law

Equitable subrogation is a state-law doctrine and therefore whether equitable subrogation applies in this case presents a question of Nevada law. The Internal Revenue Code recognizes that certain interests may be subrogated under state law and provides:

> Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for pur-

poses of any lien imposed by section 6321 or 6324.

26 U.S.C. § 6323(i)(2) (1994).

There is limited Nevada authority on the doctrine of equitable subrogation. The Nevada Supreme Court first applied the doctrine in *Laffranchini v. Clark*, 39 Nev. 48, 153 P. 250 (1915), where it held that the holder of an invalid mortgage was entitled to be equitably subrogated to the priority position of the lender whose loan she had paid. Though the Nevada courts have applied equitable subrogation in other contexts, *AT & T Technologies, Inc. v. Reid*, 109 Nev. 592, 855 P.2d 533 (1993) (workers' compensation benefits); *Federal Ins. Co. v. Toiyabe Supply Co.*, 82 Nev. 14, 409 P.2d 623 (1966) (subrogation rights of surety against bank that paid on forged endorsement); *Globe Indem. Co. v. Peterson–McCaslin Lumber Co.*, 72 Nev. 282, 303 P.2d 414 (1956) (surety subrogated to rights of State on highway construction performance bond), they have not addressed the equitable subrogation of mortgage or trust deed interests since *Laffranchini*. Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance. *See, e.g., People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1281–82 (1995); *Dutt v. Kremp*, 111 Nev. 567, 894 P.2d 354, 358 (1995). In accordance with this practice, we have looked to the law of other states when necessary to supplement Nevada's law on equitable subrogation.

### B. Equitable Subrogation

■ The doctrine of equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. *Han v. United States*, 944 F.2d 526, 529 (9th

---

**2.** *See also Katsivalis v. Serrano Reconveyance Co.*, 70 Cal.App.3d 200, 138 Cal.Rptr. 620, 627 (1977) ("a legal remedy against one of several obligors cannot relieve another obligor of his equitable responsibility"); *Dudley v. Keller*, 33 Colo.App. 320, 325, 521 P.2d 175, 178 (1974) ("an adequate remedy at law must exist against the same person from whom the relief in equity is sought in order to bar the equitable action"); *Hill v. Hill*, 185 Kan. 389, 345 P.2d 1015, 1025 (1959) (remedy must exist against same person from

whom the relief in equity is sought); *TCF Banking & Sav. v. Loft Homes, Inc.*, 439 N.W.2d 735, 740 (Minn.Ct.App.1989) (mortgagee eligible for equitable relief of rescission even though he had a legal remedy against another party); *Buttinghausen v. Rappeport*, 131 N.J.Eq. 252, 24 A.2d 877 (N.J.Ch.1942) ("the legal remedy which may move equity to deny relief is a remedy against the same person from whom relief in equity is sought.").

Cir.1991). Equitable subrogation is generally appropriate where (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. *Id.* (applying California law). Equitable subrogation is a broad equitable remedy, and therefore it applies not only when these five factors are met, but also "whenever 'one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'" *Id.* (quoting *Caito v. United Cal. Bank,* 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978)).

The IRS argues that the Morts have failed to satisfy the traditional requirements of equitable subrogation because they were mere volunteers who did not act to protect their own interests. The IRS further argues that permitting equitable subrogation here would work an injustice on the government.

**1. Volunteer Status**

 A volunteer, stranger, or intermeddler is "one who thrusts himself into a situation on his own initiative, and not one who becomes a party to a transaction upon the urgent petition of a person who is vitally interested, and whose rights would be sacrificed did he not respond to the importunate appeal." *Laffranchini,* 153 P. at 252. Parties may be considered volunteers if, in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, and they act without being requested to do so by the person liable on the original obligation. *Henningsen v. United States Fidelity Guar. Co.,* 208 U.S. 404, 411, 28 S.Ct. 389, 391–92, 52 L.Ed. 547 (1908); *Smith v. State Sav. & Loan Ass'n,* 175 Cal.App.3d 1092, 1098, 223 Cal.Rptr. 298,

301 (1985); *Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co.,* 132 Vt. 341, 344, 318 A.2d 659, 661 (1974). A person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation. *Cf. Katsivalis v. Serrano Reconveyance Co.,* 70 Cal. App.3d 200, 138 Cal.Rptr. 620, 625 (1977) (lender granted new mortgage was not a volunteer and entitled to equitable subrogation even though mortgage was invalid under California law). In contrast, a person who purchases property at a foreclosure sale is a volunteer and therefore not entitled to subrogation over a tax lien. *Fidelity Nat'l Title Ins. Co. v. United States Dept. of Treasury,* 907 F.2d 868 (9th Cir.1990).[3]

The government's argument that the Morts are mere volunteers is based in large part on the Morts' status as assignees of the Belmonts. The government emphasizes that the Belmonts, not the Morts, paid off the Kern note, and the Morts did not acquire the Belmonts' interest in the note and trust deed until after the senior encumbrances had been paid off. We reject the government's argument that the Morts are mere volunteers as a result of their assignee status.

Although Nevada courts have not considered whether an assignee assumes the assignor's equitable subrogation rights, the general rule in most states is that where a valid assignment of a mortgage has been consummated with proper consideration, the assignee is vested with all the powers and rights of the assignor. *Hagan v. Gardner,* 283 F.2d 643, 645 (9th Cir.1960); *Bartlett Estate Co. v. Fairhaven Land Co.,* 49 Wash. 58, 94 P. 900 (1908). In this case, the Morts purchased the note and deed of trust, with assignment of rights, from the Belmonts. The Belmonts made a loan to the DeLee Trust to pay off the senior Kern note, and thus, had the Belmonts retained their interest, they would have been entitled to be

---

**3.** In *Han,* 944 F.2d at 530 n. 2, we made clear that cases involving purchasers at foreclosure sales are not applicable to equitable subrogation cases not involving forced sales. In forced sale cases, the purchasers are not paying off existing debts but rather extinguishing all liens by paying any purchase price. Purchasers at forced sales do not pay money in order to satisfy the debt of another, and therefore equitable subrogation does not apply. Forced sale cases are inapplicable here.

equitably subrogated to the Kerns' priority position.[4] The Morts, as assignees of the Belmonts, assumed all the rights the Belmonts had in the DeLee note and deed of trust including the Belmonts' right to equitable subrogation of their interest. Thus, the Morts have the same rights to equitable subrogation as the Belmonts.

### 2. Injustice to the IRS

The IRS argues that even if the Morts may assert the Belmonts' rights to equitable subrogation, the doctrine should still not be applied because it would work an injustice to the rights of the government. We reject that argument, finding it to be wholly without merit.

At the time the IRS filed its tax lien, the tax lien was subordinate to the Kern mortgage. If the Morts are equitably subrogated to the priority position of the Kern mortgage, the IRS will be in the same position it was in at the time the tax lien was filed. If equitable subrogation is denied, however, the government will receive a windfall, moving up to a better position than it originally had. Under these circumstances, there is no basis for the government's argument that it will suffer harm from equitably subrogating the Morts' interest.

 We are equally unpersuaded by the government's argument that the Morts and their title insurer would be unjustly enriched if appellants are equitably subrogated.[5] The Morts are innocent parties. Though, they may have had, consistent with Nev.Rev.Stat. Ann. § 111.353 (Michie 1993), constructive notice of the federal tax lien at the time they acquired their interest from the Belmonts, constructive knowledge does not by itself bar equitable subrogation. *Han*, 944 F.2d at 530. As to the unjust enrichment of the title insurance company, the appellee has cited several cases where the title insurance company's negligence has barred the application of equitable subrogation, but in each case the title insurance company itself was seeking equitable subrogation. *See, e.g., Universal*

*Title Ins. Co. v. United States,* 942 F.2d 1311 (8th Cir.1991); *Coy v. Raabe,* 69 Wash.2d 346, 418 P.2d 728, 730 (1966). The equities in those cases are substantially different and for that reason, the cases are inapposite.

### CONCLUSION

We hold that the district court abused its discretion in ruling that the appellants must first seek relief from their title insurer before bringing an action for equitable subrogation against the IRS. We further hold that the Morts are entitled to be equitably subrogated to the priority position of the lender whose loan was paid off by the Belmonts. We reverse and remand for entry of judgment in favor of the Morts.

REVERSED and REMANDED.

---

4. Government counsel conceded at oral argument that the Belmonts would have been entitled to equitable subrogation had they retained their interest in the note and deed of trust. It is undisputed that the Belmonts were not volunteers and acted to protect their own interests.

5. The IRS's argument that the title insurer is the real party of interest in this case is also without merit. There is no evidence of collusion between the Morts and Fidelity.