Leibensperger, Edward P., J.
Plaintiff, Robert J. Hare, has lived at 181 Common Street, Belmont, Massachusetts (the “property”) since 1994. He is a co-owner of the property with defendant, Rita J. Tobias, who also resides at the property. Since their purchase of the property in 1994, as joint tenants with right of survivor-ship, the property has been mortgaged. The present litigation arises because, in 2006 and 2007, Tobias refinanced the mortgage on the property three times. The refinancings took place, according to Hare, without his knowledge or authority. Tobias allegedly forged Hare’s signature on the promissory notes and mortgages in connection with the refinancings.
The last mortgagee in the series of refinancings is defendant LPP Mortgage, LTD. The LPP mortgage is in default. Hare commenced this action in 2011 to prevent LPP from foreclosing on the mortgage. On the basis that Hare, as an equity owner of the property, had not executed the mortgage to LPP, the foreclosure proceeding was restrained.
In a counterclaim, LPP seeks a declaration of a right to equitable subrogation that would allow it to have a cognizable mortgage interest with respect to Hare. The argument is that to the extent LPP paid off a prior mortgage on the property that, in turn, had paid off earlier mortgages going back to mortgages that Hare admittedly executed as grantor and debtor, LPP is entitled to be subrogated to the rights of the earlier mortgagees. Otherwise, Hare would be unjustly enriched as a result of the discharge of the earlier mortgage. For the reasons described below, LPP’s motion for partial summary judgment seeking a declaration of equitable subrogation will be ALLOWED.
BACKGROUND
The summary judgment record provides the essential undisputed, or indisputable, facts. For purposes of this summary judgment motion only, LPP concedes Hare’s claim that his signatures on the notes and mortgages in the 2006-2007 refinancings were forged and that Hare was unaware of the refinancings.
The 1994-2002 Mortgages
When Hare and Tobias purchased the property in 1994, they granted a mortgage to the Cambridge Trust Company in the amount of $274,000. In April 1999, Hare and Tobias refinanced that mortgage. They granted a mortgage to Cambridge Trust in the amount of $350,000. As a result of that mortgage, the initial mortgage to Cambridge Trust in 1994 was discharged. In 2002, Hare and Tobias granted a second mortgage to CIT Group/Consumer Finance, Inc. (“CIT”). The amount of the second mortgage was $168,000. While Hare admits that he granted these mortgages, he asserts that with respect to the second mortgage to CIT he was not obligated on the promissory note to CIT.
The 2006-2007 Mortgages
The next mortgage transaction after the 2002 second mortgage was in April 2006. Tobias granted a mortgage to Option One Mortgage Corporation (“Option One”) to secure a debt in the principal amount of $598,400. Hare’s name and signature appear on the mortgage but Hare’s signature is a forgery. Hare asserts that he was unaware of the granting of this mortgage and that it was invalid as to him.
The settlement statement dated April 26, 2006, with respect to the Option One mortgage shows that the amount advanced by Option One in consideration of the mortgage was used to pay off the first mortgage to Cambridge Trust ($217,047.12) and the second mortgage to CIT ($153,587.21).[1] According to the settlement statement no amount of the payoff was provided by Hare or Tobias. As a result, Hare received the benefit of the discharge of the previous mortgages without providing any consideration or incurring an obligation with respect to the Option One mortgage.
In September 2006, Tobias again refinanced the mortgage. This refinancing was with Option One in the amount of $616,000 (the “second Option One mortgage”). As a result of this mortgage, the first Option *652 One mortgage was discharged. Tobias forged Hare’s signature on the note and mortgage with respect to the second Option One mortgage. In connection with the second Option One mortgage, Option One provided a loan to Tobias and paid off the first Option One mortgage in the amount of the $605,255.60.
On June 28, 2007, Tobias granted a mortgage to Mortgage Electronic Registration Systems, Inc. (“MERS”), as nominee for Fieldstone Mortgage Company (“Fieldstone”) and its successors and assigns. This mortgage was in the amount of $660,000. Again, Hare’s signature on this mortgage was forged by Tobias. The mortgagee paid off the second Option One mortgage in the amount of $628,294.63 and the second Option One mortgage was discharged. On December 9, 2008, Fieldstone assigned this mortgage to LPP. This mortgage is the only mortgage on the property.
DISCUSSION
A. Standard for Summary Judgment
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibilify, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
B. Equitable Subrogation
The Supreme Judicial Court in a “case of first impression” recognized the doctrine of equitable subrogation in East Boston Savings Bank v. Ogan, 428 Mass. 327 (1998). Applying the doctrine, the Court affirmed summary judgment declaring the priority rights of a mortgagee and an equity owner as against another mortgagee. The Court quoted §7.6(a) of the Restatement (Third) of Property (Mortgages) (1997) for the principle that “(o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.” Id. at 330. The required conditions for equitable subrogation are the following:
Before equitable subrogation applies, a court must determine: “(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debtpaid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.”
Id. at 330, citing Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996), citing Han v. United States, 944 F.2d 526, 529 (9th Cir. 1991).
As described in East Boston Savings Bank, equitable subrogation is an exception to the basic principle that determines priority among mortgagees. 428 Mass. at 329. Here, however, LPP seeks to use the doctrine of equitable subrogation to achieve a different equitable goal. LPP contends that the doctrine should allow it to succeed to the rights of the mortgagees (Cambridge Trust and CIT) that were paid off by the subsequent refinancings. While those rights have long been extinguished, LPP claims that Hare was unjustly enriched at the expense, ultimately, of LPP. The remedy for that unjust enrichment, LPP contends, should be that Hare’s equity interest should be subordinated to LPP’s mortgage to the extent of the payoff of Cambridge Trust and CIT.
There are two distinguishing features of the equitable subrogation sought by LPP from what was affirmed in East Boston Savings Bank. First, LPP seeks subrogation to the rights of prior mortgagees so as to assert those rights against the equity owner, Hare. In East Boston Savings Bank the doctrine was used to prioritize rights of mortgagees. Second, in order to claim equitable subrogation, LPP most rely upon a series of payoffs of prior mortgages. In East Boston Savings Bank, the subrogee directly paid off the mortgage to which it sought to be subrogated. I address each of these distinguishing features, in turn.
As referenced in East Boston Savings Bank, the Court has “long held that our courts have broad power over mortgages.” Id. at 328. The fundamental equitable principles that provide the basis for equitable subrogation should be examined to determine whether they apply to LPP’s claim. Applying the statement of principle from the Restatement, supra, §7.6(a), Hare’s obligations under the Cambridge Trust and CIT mortgages were performed by another (Option One) such that Option One should be subrogated to be in the position of the prior mortgagees to prevent unjust enrichment of Hare. Each of the five conditions for equitable subrogation is met. Option One made the
*653 pay-off of the prior mortgages to protect its own interest. Option One was not a volunteer. Option One was not liable for the debt paid but it paid off the debts to Cambridge Trust and CIT in full. Finally, no junior lienholders will be prejudiced by the application of equitable subrogation. The. Appeals Court, in an unpublished opinion pursuant to Rule 1:28, recognized the application of the doctrine of equitable subrogation against an equity owner on comparable facts. Option One Mortgage Corp. v. Oakhem, 72 Mass.App.Ct. 1104 (2008), 2008 Mass.App. LEXIS 665. See also, Select Portfolio Servicing, Inc. v. Needel, 2009 WL 1089438, *5 (Land Court 2009) (equitable subrogation invoked against equity owner). See also, Restatement (Third) of Property (Mortgages) §7.6, Illustration 3 (1977). Equity-demands that the doctrine be applied pursuant to LPP’s request for declaratory judgment against Hare.
That LPP did not directly pay the debt of Hare does not change the equities. Hare was unjustly enriched when Option One paid off the mortgages to Cambridge Trust and CIT. Hare continued to be unjustly enriched as each subsequent mortgagee paid off the previous mortgage. Presently, LPP holds a mortgage granted by Tobias but cannot exercise rights of foreclosure because of Hare’s equity interest, even though that equity interest is free of mortgages because of payment by another. LPP should succeed to the equitable subrogation right of Option One, the direct payor of Hare’s debt. JP Morgan Chase & Co., Inc. v. Casarano, 2010 WL 3605427, *4 (Land Court 2010) (intermediate refinancings should not prohibit equitable subrogation), affirmed on other grounds, 81 Mass.App.Ct. 353, 354 n.6 (2012).
CONCLUSION
The principles of equitable subrogation apply to LPP’s claim. Accordingly, this court declares that LPP became by subrogation the owner of the Cambridge Trust and CIT mortgages paid off by Option One. LPP retains the priority of those mortgages over the interests of both Hare and Tobias to the extent of the pay off by Option One— $370,634.33. Partial summary judgment entering this declaratory judgment shall issue.

 Hare moves to strike from the summary judgment record the settlement statement, as well as two subsequent settlement statements. Hare argues that the settlement statements are not admissible into evidence as required by Mass.R.Civ.P. 56(e) because they were not properly authenticated. This objection was cured by LPP by the submission of affidavits of the record keepers of the mortgagees attesting to the authenticity and qualification as business records of the settlement statements. Thus, the settlement statements are admissible and Hare’s motion to strike is DENIED.