NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1315                                        Appeals Court

BANK OF AMERICA, N.A.[1] vs.  DIAMOND FINANCIAL, LLC.


No. 14-P-1315.

Suffolk.     June 12, 2015. - October 20, 2015.

Present:  Cohen, Green, & Trainor, JJ.


Subrogation.  Mortgage, Priority, Junior lien.  Jurisdiction,
    Equitable.  Land Court.



Civil action commenced in the Land Court Department on
December 22, 2011.

The case was heard by Judith C. Cutler, J., on motions for
summary judgment.


George E. Sousa for the defendant.
Howard S. Goldman for the plaintiff.


TRAINOR, J.  Bank of America (BOA), the plaintiff, brought

suit against Diamond Financial, LLC (Diamond),[2] seeking equitable

---

[1] Successor by merger to BAC Home Loans Servicing, L.P.,
formally known as Countrywide Home Loans Servicing.

[2] There were other named defendants initially.  Two of the
defendants defaulted and a third did not file any papers

subrogation of a mortgage it holds on property located at 18 Eastwood Road, in the town of Shrewsbury. The parties filed cross motions for summary judgment. In granting the plaintiff's summary judgment motion, the judge found that BOA "is entitled to be equitably subrogated to the priority position" for $330,368.29 of the previously recorded mortgage, which was discharged. The defendant, Diamond, appeals.

Background. We review the relevant undisputed facts. Milton J. Miranda and Solange D. Miranda purchased a property in Shrewsbury on July 31, 2002. The purchase was financed for the most part with a mortgage loan from Moneyone Corporation. On August 24, 2004, the Mirandas refinanced with a $336,150 mortgage loan from Argent Mortgage Company, LLC (Argent).[3] This mortgage was recorded.

On or about June 28, 2006, the Mirandas borrowed $50,000 from the defendant and granted the defendant a mortgage on the Shrewsbury property and on a property in the city of Worcester.[4] On September 29, 2006, the Mirandas refinanced the Argent mortgage with a mortgage loan of $344,000 from Equity Advantage

---

regarding the motions for summary judgment. The only original defendant involved in this appeal is Diamond Financial, LLC.

[3] The parties agree this mortgage was assigned to the Mortgage Electronic Registration System shortly thereafter.

[4] In addition, the mortgage and security agreement included as collateral various personal property held at both properties.

(Equity).  As part of the refinancing, $330,368.29 of the Equity loan was used to pay the full balance of the Argent mortgage. The Equity mortgage was recorded on October 12, 2006, and the discharge of the Argent mortgage was recorded on October 30, 2006.  The closing of the Equity mortgage was conducted by a closing attorney and Closeline, LLC.  The Diamond mortgage was not identified during the refinancing process and Equity did not enter into a subrogation agreement.  The closing attorney issued a title insurance policy through TICOR Title Insurance Company (TICOR).

There is no evidence that Diamond learned of the change in the record order of liens prior to this action.  There also is no evidence that Diamond extended additional credit or changed the terms of its loan to the Mirandas at any time after the initial loan.  BOA is the current holder of the Equity mortgage. BOA began foreclosure proceedings due to the Mirandas' default, but stopped the proceedings when the Diamond mortgage was discovered.

Discussion.  The defendant's underlying argument appears to be that the plaintiff is barred from receiving an equitable subrogation because BOA could make a title insurance claim, and therefore has a remedy at law.[5]

---

[5] Diamond also argues that the action does not contain a real party in interest, because BOA's title insurance company is

Over the long history of our equity jurisprudence the general rule has maintained a limitation on the exercise of equity jurisdiction if an adequate remedy existed at law. Prior to 1857, the equity jurisdiction of the Supreme Judicial Court consisted of specified topics, each of which were generally qualified by the phrase "when the parties have not a plain, adequate, and complete remedy at the common law." Acts of 1817, c. 87, and Revised Statutes 1836, c. 81, § 8. When full equity jurisdiction was given to the Supreme Judicial Court in 1857, it was expressly limited to matters "where there is not a full, adequate and complete remedy at law." Acts of 1857, c. 214. This limitation upon equity jurisdiction was removed in 1877 but a similar limitation was retained in 1882 for specific equity cases enumerated in the statute. Compare Acts of 1877, c. 178,

---

involved in prosecuting the claim. BOA is the named party who has a real interest in the litigation. See Mass.R.Civ.P. 17(a), 461 Mass. 1401 (2011) ("every action shall be prosecuted in the name of the real party in interest"). There is no merit to the defendant's argument that this action is missing a real party in interest. Diamond also seems to argue that it is a violation of the title insurance policy for the plaintiff's title insurance company to assist with litigating this case. This argument also lacks merit. Even assuming the policy did not allow TICOR to assist with litigation, but see GMAC Mort., LLC v. First Am. Title Ins. Co., 464 Mass. 733, 743 (2013) ("initiating suit to cure a title defect is generally an option available to the title insurer under a standard title insurance contract"), the defendant has no right to enforce the terms of the title insurance policy. See James Family Charitable Foundation v. State St. Bank & Trust Co., 80 Mass. App. Ct. 720, 724 (2011) ("an incidental beneficiary obtains no right to enforce the contract").

§ 1, with Public Statutes of 1882, c. 151, § 4. See Public Statutes of 1882, c. 151, § 2. The 1882 act employed particular topics of jurisdiction that are still employed in G. L. c. 214, § 3. The limiting language is no longer included in the statute. See G. L. c. 214, § 3.[6] However, after the limiting language in the statute was removed, there was still a continuing limitation expressed in our case law. When a remedy at common law is full, adequate, and complete, "a party is still remitted to the law court, unless a remedy in equity is given expressly by statute." Maguire v. Reough, 238 Mass. 98, 99 (1921). See Jones v. Newhall, 115 Mass. 244, 251 (1874). This limitation is grounded in the fundamental right to a trial by jury guaranteed by our State Constitution. See Proctor v. MacClaskey, 278 Mass. 238, 242 (1932).

It has been generally held that Massachusetts courts have no inherent equitable authority and, since their creation,

---

[6] Chapter 178 of the Acts of 1877 provided that, "The [S]upreme [J]udicial [C]ourt shall have jurisdiction in equity of all cases and matters of equity, cognizable under the general principles of equity jurisprudence; and in respect of all such cases and matters, shall be a court of general equity jurisdiction" (original and concurrent jurisdiction in the Superior Court was added by the Acts of 1883, c. 223, § 1). This enactment would seem to confer an unlimited and unrestricted jurisdiction except for the principles inherent in equity jurisprudence.

exercise purely common law authority.[7] Any equitable power they may exercise is because of an express grant of such power by the terms of a statute. Our courts have generally employed this restrictive method of interpretation and have limited even express grants of equitable authority to situations where there is no "plain, adequate and complete remedy at law."[8] Cadigan v. Brown, 120 Mass. 493, 494 (1876). See Black v. Black, 4 Pick. 234 , 237-238; (1826); Bowditch v. Banuelas, 1 Gray 220, 228 (1854); Jones v. Newhall, supra; and Suter v. Matthews, 115 Mass. 253, 255 (1874).

Since the merger of the procedure for bringing suits in equity and at law in 1974, some of our modern authorities have determined that, "[a]s a practical matter today, the adequacy of a remedy at law is anachronistic because of the merger of law and equity. All actions, whether formerly at law or in equity, are commenced as civil actions in a uniform manner." Nolan & Sartorio, Equitable Remedies § 4.18 (3d. ed. 2007). See

---

[7] See Parker v. Simpson, 180 Mass. 334, 350 (1902) (" . . . although up to the time of the adoption of the constitution the common law courts were given certain powers to chancer bonds and to relieve against the foreclosure of mortgages, there never was in actual operation in the colony or province a court of chancery.")

[8] For example, the power to decree the specific execution of a written contract was given by specific legislative grant of statutory authority. See Revised Statutes of 1873, G. L. c. 113, § 2 (now G. L. c. 214).

Mass.R.Civ.P. 2, 365 Mass. 733 (1974). The Reporter's Notes to rule 2, however, emphasize that "'[m]erger' of [l]aw and [e]quity, refers only to the procedure involved, i.e., the manner of framing and trying the issues, and the type of relief. 'Merger' does not alter the traditional substantive distinctions between legal and equitable remedies. Although the once separate procedures have been merged, the right to equitable remedies still exists; now, however, a party may seek legal and equitable relief simultaneously."[9] We are reminded that even in our desire and enthusiasm for ease and simplicity of practice and procedure, "[t]he controlling reason why the boundaries of general equity jurisdiction ought not to be widened by judicial decision beyond those indicated by established principles, is that the constitutional right of trial by jury would thereby

---

[9] The reporter is not unique in this observation. "The reformed procedure, in its abolition of all distinction between actions at law and suits in equity; in its abrogation of the common law forms of action, and its institution of one 'civil action' for all remedial purposes . . . was not intended to affect, and does not affect, the differences which have heretofore existed, and still exist, between the separate departments of 'law' and 'equity.'" The reformed procedure "was not intended to affect and does not affect, the settled principles, doctrines, and rules of equity jurisprudence and equity jurisdiction." Pomeroy, Equity Jurisprudence, § 354 (4th ed. 1918).

become correspondingly narrowed." Parkway, Inc. v. United States Fire Ins. Co., 314 Mass. 647, 651 (1943).[10]

Notwithstanding this limitation on the exercise of equity jurisdiction in our common law, commentators have long maintained that "exclusive equitable jurisdiction, or the power of the courts to adjudicate upon the subject matters coming within that jurisdiction, exists independently of the adequacy or inadequacy of the legal remedies obtainable under the circumstances of any particular case." Pomeroy, Equity Jurisprudence, § 218 (4th ed. 1918). Pomeroy maintains that exclusive equity jurisdiction exists in the areas of equitable

---

[10] While the incidence of appellate review and discussion of this issue has significantly decreased since the change to our rules of civil procedure in 1974, our cases continue to suggest that an adequate remedy at law is still a material consideration when considering equitable relief. See, e.g., Foster v. Evans, 384 Mass. 687, 694 (1981) ("In cases involving fraudulent conveyances, attempts to levy upon an execution are particularly likely to prove futile. . . . We hold, therefore, that a plaintiff who has obtained a judgment at law against a debtor, and who alleges that the judgment cannot be satisfied because the debtor has fraudulently transferred his assets to a third party, has stated a case which is cognizable under the general principles of equity jurisprudence. Since the plaintiff here has no adequate remedy at law, he is entitled to the equitable relief he seeks"); Frank J. Linhares Co. v. Reliance Ins. Co., 4 Mass. App. Ct. 617, 619 (1976) ("It is a fundamental principle that, in the absence of a statute specifically conferring equity jurisdiction, a party may not seek in equity what he could obtain in an action at law. Otherwise the defendants' right to trial by jury might be infringed. [The plaintiff's] bill, while lacking in detail, alleged sufficient facts against [one of the defendants] to state a common law cause of action in tort for negligence. Having an adequate remedy at law against [that defendant], [the plaintiff] could not resort to equity").

estates, mortgages, and liens:  specifically in the context of "[s]ubstituted [l]iens" (subrogation).  See Pomeroy & Symons, Equitable Jurisprudence, § 719a (5th ed. 1941).  At least one of our appellate decisions agrees that some plaintiff rights are purely equitable in nature and the existence of an adequate and complete remedy at law is irrelevant.  See <u>Boston</u> v. <u>Santosuosso</u>, 298 Mass. 175, 180 (1937).  As a practical matter however, this claim of exclusive jurisdiction is neither incompatible nor inconsistent with our application of equitable remedies only in the absence, or inadequacy, of an available legal remedy.  It is with this history and these considerations in mind that we address the argument made by the defendant in this case.

Massachusetts courts have long exercised broad powers over mortgages including the power of equitable subrogation.[11]  "It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected." <u>North Easton Co-op. Bank</u> v. <u>MacLean</u>, 300 Mass. 285, 292 (1938).

---

[11] The Land Court has jurisdiction over this action because it has "original jurisdiction concurrent with the [S]upreme [J]udicial [C]ourt and the [S]uperior [C]ourt of . . . [a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved."  G. L. c. 185, § 1(<u>k</u>).

Cf. Bates v. Boston Elev. R.R. Co., 187 Mass. 328, 341 (1905) ("The court of law has no jurisdiction to inquire into and adjust the equitable rights, if any, between the several mortgagees where the mortgage debts are also secured by liens on other funds.  If such rights exist they must be enforced by a court of general equity jurisdiction").  Subrogation allows "the substitution of one person in place of another . . . so that he who is substituted succeeds to the rights of the other." Provident Co-op. Bank v. James Talcott, Inc., 358 Mass. 180, 188 (1970), quoting from Jackson Co. v. Boylston Mut. Ins. Co., 139 Mass. 508, 510 (1885).

While equitable subrogation has no specific statutory authority for its application, see G. L. c. 214, § 3, a review of our appellate cases, well into the early part of the last century and the later part of the previous century, involving the subrogation of mortgages applied equitable principles even when a legal remedy was available as it was in each of those cases.[12]

---

[12] See, e.g., Worcester N. Sav. Inst. v. Farwell, 292 Mass. 568, 573-574 (1935) (subrogation was allowed for the new bank where plaintiff's attorney examined the title to the premises and presented it with a written certificate as to the state of the title, which did not mention the junior lien); North E. Co-op. Bank v. MacLean, 300 Mass. at 289 (original first mortgagee had a title examiner who "certified to it that the new mortgage . . . would be a first lien on the property" but was allowed to return to first position under principles of equity); Provident Co-op. Bank v. Talcott, Inc., supra at 184 (allowing intended

While being mindful of the general rule that equity can retain jurisdiction only in cases where there is no "plain, adequate and complete remedy at law," Cardigan v. Brown, 120 Mass. at 494, our courts have consistently applied equitable principles to actions involving mortgages generally and specifically to actions requesting equitable subrogation. The exercise of equity jurisdiction in these cases appears to have been unlimited except for application of the limiting principles inherent in our equity jurisprudence. See East Boston Sav. Bank v. Ogan, 428 Mass. 327, 328-332 (1998). Our courts have always applied equitable subrogation even though a remedy at law has also always been available. The issue in this situation is the adequacy and appropriateness of the legal remedy. The equitable remedy sought is fundamentally different than any potential remedy at law and is the only remedy capable of providing complete justice in the situation. Here, the availability of a remedy at law becomes immaterial, because it is inadequate and inappropriate to resolve the issue fairly to all parties.[13]

---

senior lien holder declared as such even when the current lien holder was the attorney's mother who paid the mortgage to avoid a claim against her son's "errors and omission liability insurer").

[13] See Noyes v. Bragg, 220 Mass. 106, 109 (1915) ("The objection that the plaintiff had an action at law to recover damages for breach of agreement does not deprive equity of its jurisdiction to compel specific performance of the contract"); Boston v. Santosuosso, 298 Mass. at 180 ("The city of Boston, in

Additionally, a legal remedy in the form of money damages would not restore the plaintiff to its rightful senior position. Any proposed legal remedy would also result in the unjust enrichment of a junior interest because of the potential unjustified windfall it would receive by advancing to the priority position. Subrogation of a mortgagee, as an equitable remedy, was always intended to prevent a person, in this case a junior interest, from receiving an unearned windfall at the expense of another person, who represents the rightful priority interest. See Restatement (Third) of Property (Mortgages) § 7.6 comments a & f(1997). The existence of a remedy at law is irrelevant unless it provides a plain, adequate and complete remedy to the issues confronting the parties. Here, only an

---

its brief, points out that the bill of complaint does not seek an equitable remedy for the protection of a legal right, but, as the beneficiary of a trust, seeks to have the trustees who received the legal title to the res of the trust [a fund of $50,000] perform the trust. The right of the city of Boston as a cestui que trust is preeminently an equitable right, and it arose as soon as the agreement was made and the fund was received by its mayor. When the fund was received under the agreement by the mayor the defendants held the legal title in trust to pay it over to the city of Boston. The trust obligation was not performed by holding the fund, dissipating the fund or converting the fund into a substituted res. The right of the plaintiff is a pure equitable right, and it is immaterial that it may have also a plain, adequate and complete remedy at law. . . . This court said in Wilkinson v. Stitt, 175 Mass. 581, 583, [1900], . . . 'we have never supposed that the fact that an action for the money had and received would lie at law was sufficient to oust the jurisdiction of the court in equity to compel the delivery of the money . . . [if] the cestuis que trust elected to proceed in that court'").

equitable subrogation could make the plaintiff whole without also creating an unjust enrichment. Furthermore, the plaintiff's remedy at law is against another third party. The plaintiff has no legal remedy against the defendant. The decision of the Land Court judge also satisfied the requirements of equity jurisprudence in order to apply an equitable subrogation.

In East Boston Sav. Bank v. Ogan, 428 Mass. 327, 330 (1998), quoting from Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996), the Supreme Judicial Court adopted five factors that must be determined before equitable subrogation can be applied. These five factors are:

> "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder."

In addition, "[t]he court must also examine the actions of the subrogee." Id. at 331. "The subrogee's behavior is an important consideration that the court must balance in its equitable analysis of the interests of both mortgages." Id. at 332. However, the subrogee's negligence or lack of diligence

does not bar recovery and is only a material consideration when the intervening lienholder has been prejudiced.[14]  See ibid.

Here, the judge appropriately found that the equities in this case supported applying an equitable subrogation.  There was no evidence noted by either party indicating that Diamond learned of the change in priority and changed its position based upon that knowledge.  As the judge correctly concluded, lack of diligence or a mistake by the subrogee is only material if there is evidence that the junior lienholder was prejudiced.  See id. at 332.

Finally, the judge ensured that the priorities in applying equitable subrogation were accomplished.  See id. at 330 ("A court applying equitable subrogation must ensure that the intervening mortgagee is not unjustly enriched by succeeding to first priority, but it also must ensure that the intervening mortgagee does not receive a lower priority as a result of the subrogee's mistake").  BOA was not equitably subrogated for the full value of the loan it acquired.  Instead, only the portion

---

[14] Under the Restatement (Third) of Property (Mortgages) § 7.6 comment e (1997), subrogation can be granted even in the presence of actual or constructive knowledge of the intervening interest, because notice is not necessarily relevant.  The expectation of securing the same priority as the mortgage being paid is the relevant consideration.  See id at 331 (subrogation is allowed where actual or constructive knowledge exists and equity will determine if subrogation is inappropriate under the circumstances).

of the Equity loan proceeds that were used to pay off the Argent mortgage were moved to the first position.  As a result, BOA was neither unjustly enriched by succeeding to first priority nor was Diamond placed in a position of lower priority.

<u>Judgment affirmed</u>.